Good morning, Your Honors, and may it please the Court. My name is Andrew Johnson, and I, along with my co-student counsel, Daniel Galindo, represent the petitioner, Averre Morales-Gomez. May I ask who is Tiffany Gates here? Tiffany Gates is our supervising counsel, Your Honor, who is here with us today. Thank you very much. All right. Along with Gary Watt. Thank you. We are here today with our supervising counsel. Your Honors, I'll be reserving about two minutes of my time for rebuttal, and I'll do my best to keep my eye on the clock. And are you splitting argument with your co-counsel, or is it just you? It'll just be me, Your Honor. Okay. Thank you. Your Honors, this Court should grant the petition for review because Mr. Morales-Gomez's PSG is defined with particularity, is socially distinct within El Salvador, and is comprised of members who share common immutable characteristics. I don't really understand the social distinctness. It sounded from the evidence as though everybody in El Salvador is at risk from these criminal gangs. And I think one of the pieces of evidence said that there's no effective government there. The country is ruled by the gangs. Your Honor is correct that the Overseas Counsel report and the State Department reports do explain that everybody in El Salvador is at risk for gang violence. However, those reports also explain that youth are at a particularly heightened risk for gang violence because of their age. I don't think the particularly heightened is part of the criteria. I think your argument means that every El Salvadoran is entitled to asylum in the United States. No, Your Honor. We are arguing that a very discreet and narrow class of individuals. All young males? No, Your Honor. All young males who live in one gang's territory and go to school in another is the particular social group that we are arguing today is cognizable as a matter of law. And both the BIA and IJ properly construed Mr. Morales-Gomez's group as being defined as young Salvadoran males who live in one gang's territory and go to school in another. And so one is either a young Salvadoran male or is not. One either lives in one gang's territory and goes to a school in another or does not. I think I'm troubled because of the virgule. That's the slash. Whenever I see an and or with a virgule in between, what it means is I don't know if it's and or if it's or. And it looks like something that's used to broaden things. It's not used to broaden things here, Your Honor. This circuit has never held that a particular social group must be strictly construed. And as I mentioned, the BIA and the IJ properly construed the definition of this particular social group as being where one lives and goes to school. Why would you have the slash or then? It looks like you're not saying young Salvadoran males who live in one place and go to school in another. You're saying are perceived to be a member of a gang because of where they live or go to school and are thus targeted. So the going to school is not part of your definition. It is part of our definition. It's not a condition because of the and or. Your Honor, the as of. The or means either one is enough. In a strict reading, Your Honor, you are correct. However, the BIA properly construed and evaluated this group based on the and not the or. And the government on page 24 in its briefs also stated that this group was defined as young Salvadoran males who are perceived to be a member of a gang because of where they live and go to school. So the BIA's entire legal analysis rested on the construction of this group as being defined as where one lives and goes to school. However, after this proper construction that the BIA identified, the BIA went on to misapply its own precedent to foreclose Mr. Morales-Gomez's group as lacking particularity and social distinction. If it is just the and, how do you explain his brother who lives in the same place but doesn't go to school across the gang line? Your Honor, his brother had not yet been branded by as being perceived as a member of the gang as a gang as Mr. Morales-Gomez was. And this record is. What I meant was why can't this asylum seeker go to school on the same side of the line as his little brother? Your Honor, the record is silent as to why Mr. Morales-Gomez went to this particular school. And there is no evidence in the record to explain why Mr. Morales-Gomez initially went to this school. But it doesn't matter for whether or not, as a legal matter, this group is cognizable because the moment Mr. Morales-Gomez was branded as a member of a gang because of where he lived and went to school, that was a shared past experience. If the record is silent, then since Morales-Gomez has the burden of proof, why doesn't that mean as far as we know he could have gone to school or as little brother does in territory controlled by the same gang? Your Honor, it doesn't matter where Mr. Morales-Gomez could have gone to school because the fact that he did go to school and that he was branded is a shared past experience that by definition he cannot change. So Mr. Morales-Gomez is in a very different posture than his brother because Mr. Morales-Gomez had been branded for persecution because of where he lived and went to school. So for purposes of the particularity and social distinction test and the immutable characteristics that define this group, it is irrelevant that Mr. Morales-Gomez could have gone to a school because he was branded as a member of a gang because of where he lived and went to school. And as this court explained in Henriquez-Rivas v. Holder with respect to the particularity prong, if a persecutor does not actually rely on the specific boundaries of the social group to persecute an individual, it may be harder for the applicant to show that his group is in fact particularly defined. And here, Mr. Morales-Gomez has shown, as on page 158 of the record, when the 18th Street Gang first approached Mr. Morales-Gomez at his school, they told him that we know you're a member of MS-13 because we saw you leave MS-13 territory and come to school in 18th Street Gang territory. They went on to tell him if he ever came back, they would kill him. In addition, on page 157 of the record, Mr. Morales-Gomez explained that the 18th Street Gang was a group of Salvadorian males who lived on the MS-13 side of the San Antonio River and went to school in the 18th Street Gang side of the river. And lastly, on page 159 of the record, when MS-13 approached Mr. Morales-Gomez and put a gun to his head and said, we know you're a member of the 18th Street Gang because we saw you going to school in 18th Street Gang territory, all goes to show that Mr. Morales-Gomez was a member of the gang, and that the gang was a member of the gang. And it was a matter of particularity, and it was legal air for the BIA to rely on the precedent it set in matter of WGR. Something that puzzles me about this record is that it appears somewhat counterintuitively that the gang, the gangs assume that any young male who lives in an area where the gang is active is a member of the gang. Is it true that all males are members of the gang of the neighborhood in which they live? The record is silent on that, Your Honors. I can't affirmatively say based on this record if that is true. But that is almost irrelevant to Mr. Morales-Gomez's claim, because Mr. Morales-Gomez's claim rests on the notion that once an individual is actually perceived to be a member of a gang, that Salvadorian society understands that once a young Salvadorian — But how, then, is that distinct from any other person who is, in fact, a member of a gang and will suffer because of that at the hands of some other gang? Well, Your Honor, the group that you just articulated could be — probably wouldn't be cognizable based on this particular record. But here, on this record, Mr. Morales-Gomez is saying that there is a very narrow class of individuals that society understands. And the declarations that are in the record on page 175, on page 157, and on page 167 all explain that Salvadorian society specifically understands that once a young male is branded as a member of a rival gang because of where they live and go to school, that that young male will be persecuted. That is what separates this group from the group that Your Honor just articulated. Okay. We've been eating into your rebuttal time, so why don't we hear from the government and then you'll have a chance to respond. Thank you, Your Honor. May it please the Court, Victoria Braga, appearing on behalf of the Attorney General. The Court should deny the petition for review because substantial evidence supports the agency's finding that the Petitioner failed to assert a cognizable particular social group. Specifically, the particular social group proposed by the Petitioner is not socially distinct or sufficiently particular to qualify as a particular social group. Excuse me, counsel. Did either the IJ or the BIA consider the evidence the Petitioner submitted in denying him PSG status? Why shouldn't we send this case back to the IJ via the BIA to consider in the first instance the evidence that Petitioner submitted? Well, I have several responses to that question. First, the agency was not the Petitioner. Well, let me just finish the question, because I looked at footnote 6 in your brief where you apparently conceded that it should be sent back. Is that correct? Well, I believe in footnote 6 we were saying that if the agent — if this Court finds that the evidence that is cited to this Court is relevant to the particular social group determination and that the agency should analyze this evidence in the first instance, then it would be appropriate for the Court to remand the case. However, for multiple reasons, we don't believe that remand is necessary. First is that the agency did adequately analyze the record as a whole. Petitioner failed, except before this Court, to specifically identify any evidence bearing on social distinction and particularity. Notably, in Petitioner's brief to the Board, which is found, the argument section in the record on pages 9 and 10, Petitioner only includes one paragraph regarding his argument that his group is socially distinct and particular, and this paragraph is very conclusive. It doesn't cite to any record evidence, and it doesn't cite to any law of this Court or the agency. Therefore, the Board was correct in its determination or was — acted appropriately in making its determination that the record considered as a whole, as presented to the Board by the Petitioner, did not support the — the finding that Petitioner's group was socially distinct or particular. Additionally, the evidence that Petitioner now cites to this Court, particularly concerning social distinction, does not prove that his group is socially distinct. In that way, it's not necessary for the Court to remand to the agency because the evidence would not change the agency's conclusion on the question. Specifically, Petitioner points to one article in the record found at page 245, and Petitioner quotes a section of that article as saying that residents who cross a bridge cross between gang territories, such as this Petitioner did, assumedly on his way to school. And it says that those people are at higher risk for gang violence. However, this does not show that simply crossing the bridge identifies people to Salvadoran society as distinct or different from other members of Salvadoran society. The article makes the statement in the larger context of explaining that no one is immune from gang violence in El Salvador — that's a quote from the article — and also a quote from the article saying that fear of gangs permeates daily life in El Salvador. Ginsburg, did either the IJ or the BIA make any factual findings? The immigration judge summarized the testimony and the evidence in the record and then made the — and also both the immigration judge and the Board of Immigration Appeals cited the group specifically as the Petitioner had proposed it, and then found that under its precedent, this group lacked social distinction and particularity. Well, you argued for a standard of review of substantial evidence, and I couldn't find any factual findings to which to apply that standard. Wouldn't this be de novo review here? The — we argue that the standard of review applied to the group cognizability question under this Court's precedent in Reyes would be the substantial evidence standard. However, in this case, even if the Court were applying a de novo review standard and considering for the first time, as it is presented for the first time to this Court, the article now cited by the Petitioner, this evidence would not support a finding that the Petitioner is a member of a socially distinct or sufficiently particularized particular social group. Further discussing the evidence that the Petitioner has submitted, he also now mentions a list of gang members that — or a list of boys who lived on the other side of the river that was maintained by the 18th Street Gang. There's no evidence in the record other than a statement in Petitioner's declaration that he heard rumors that such a list existed. While Petitioner was found credible, it's appropriate for the agency to require corroboration of even credible testimony or statements made in a declaration. So this — the existence of this list is not adequately corroborated. Additionally, even if the list existed, the list refers mostly to the perception of the persecutors, and Petitioner in their oral argument today spoke at length about the perception of the gang members, about who is a member of a rival gang. This Court has provided that it's not the perception of the persecutor that is most relevant, and rather the perception of Salvadoran society with regard to social distinction. Ultimately, here, the fact that Petitioner travels between gang boundaries in El Salvador, given the prevalence of gang violence in El Salvador, and the fact that gangs operate throughout the country, does not differentiate him appreciably from the rest of Salvadoran society, and therefore his group is not socially distinct. Do we have other cases that address failed states? Let me tell you what I'm thinking about. One way you can have a federal system is by having multiple sovereign states that are unified to a greater or lesser extent, like the United States. Another way you could have it, I suppose, would be a kind of federal system where the sovereigns within the system are gangs rather than states. What it sounds like here, from the country report and the other materials, is that that's what El Salvador is. You stay in your own gang's territory, you're okay. You go from one sovereign's territory to another, you're at risk. Do we have other cases that address whether that amounts to any of the categories for asylum? I'm not sure if the court has specifically addressed that question. However, the court has addressed the fact that gang violence plaguing a population at large, or specifically gang recruitment efforts plaguing the youth of a population at large, would not qualify an individual for asylum. Specifically the Ramos-Lopez v. Holder case in 2009 provided that youth who resist gang recruitment is not a socially distinct group because violence and crime in El Salvador is widespread and affects all segments of the population. Additionally, in Santos-Limos v. Mukasey, a 2008 case, the court provided that youth who resist gang recruitment are not socially visible, the former version of socially distinct, because this group did not suffer from a higher incidence of violence than the rest of society. So basically what the court is looking at is a society where gang violence is prevalent, and I would argue that not only traversing gang borders, but also, as one of the articles in the record, the article petitioner now cites, states, no one is immune from gang violence in El Salvador, and it permeates daily life, such that people going about their daily life, whether that involves crossing gang borders or not, are subject to gang violence and the youth are subject to gang recruitment efforts. So defining the social group in this way, someone who is basically subject to gang violence and gang recruitment effort because he moves around El Salvador, does not make the group socially distinct. The group also lacks particularity in that it is vaguely defined, it doesn't refer to all of the boys that live in one place or even all of the boys that go to school in one place. Given the fact that the gangs move around El Salvador, it is also amorphous as to who is doing this crossing of gang boundaries. And additionally, as this court noted, it's not... Oh, I thought it was fairly well defined that it's crossing the boundary that puts a person at risk. Well, it does put a person at risk to cross boundaries, but it's the boundary, I guess, in that sense that wouldn't be well defined, given how gangs move around. So... Was evidence that the boundary is not well defined? I thought in this case it was a bridge. They do reference the bridge. However, there's also, I believe, testimony or a declaration in the record that indicates that at one point the MS-13 gang controlled an area and now the 18th Street gang controls an area. So that's some evidence that the boundary is at least amorphous, meaning that a group who crosses the boundary would be amorphous. And additionally, as this Court noted, Petitioner's younger brother, who is at most two years younger than Petitioner, does not fall within the group, showing that it is vague and nondescript or nondistinct as to who falls in and out of the group. Well, then, with respect to that, your opposing counsel said, well, the brother wasn't targeted. How do you determine when someone is targeted? What is the evidence that he was targeted? Your Honor, I see my time has expired. May I briefly answer? Please, please. All right. I think you can tell when someone is targeted based on whether they have an interaction with gang members, or at least that's how targeting is defined in this case. So Petitioner's brother never had a specific interaction with gang members. However, that's not to say that that doesn't—there's no reason that he should not have been targeted, given the way that the group is defined. He should understandably fall within that group of young Salvadoran males who go to school in one area and live in another area. Thank you. Thank you. Would you put two minutes on the clock, please? Thank you. Your Honors, as this Court explained in Henriquez-Rivas, the persecutor's perspective has an important role in the social distinction analysis. And the way an applicant goes about showing social distinction is by developing a record that includes declarations, country reports, and news articles. And that is exactly what Mr. Morales-Gomez has done. And on page 167 of the record is an important declaration from Mr. Morales-Gomez's mother, where she's describing her reaction to the experience of another mother in her community, where that mother's son was similarly branded as Mr. Morales-Gomez was. And I quote, seeing that a mother, after her 14-year-old son is assassinated because he was mistaken for a contrary gang member, I only thank God that my son was well and safe. This declaration, in addition to the other declarations that are in the record, go to show that Mr. Morales-Gomez's group, or Salvadoran society, understands that the common immutable characteristic that defines this group defines a distinct class of persons in El Salvador. You know, this case and a lot of these gang cases I find just agonizing because the gangs have such control over the societies that it is dangerous simply to live in the societies. It's particularly dangerous to be a young male, but dangerous to everybody in the society. But I also find it difficult, on the other side, because our social group definition under the immigration law has been morphing to some degree, but they tend to be fairly discrete groups. If we were to find that this is a social group within the meaning of our immigration law, it sounds an awful lot like a much larger group, which is to say, someone who lives in one area and has something to do in another area, work, school, some other thing that takes him out of the area, and because of his moving into the different area, becomes branded by mistake. And I'm just trying to think realistically about what the Supreme Court and what the BIA are going to do with this social group idea. I think pretty soon we're into the area of pretty much anybody who gets threatened with gang violence because of where they live and where they've gone to, this is then going to be almost an unmanageable idea. How do you respond to that? That's not quite right, Your Honor. In this case, it must be a school-age Salvadorian male who lives and goes to school, and each individual applicant must establish a record, as this Court reiterated in Pereira-Bach, to prove that their claim for asylum is cognizable. In addition, any applicant who would claim this— No, I get that. No, I get that. Then, and your definition is actually fairly narrow, but if it is a social group within the meaning of the immigration law as so defined here, the next case is going to be someone who lives in the group, in the area of MS-13, and has a job in the area of somebody  And that's, again, going to be a very small group. But how do you—and how do you limit the principle that we would be establishing here? We limit it, Your Honor, to this particular—to the exact definition of this group. The group that Your Honor just articulated, that applicant would have to develop a record that that group is, in fact, socially distinct. But Mr. Morales-Gomez has developed a record which shows that this particular group is distinct. And in addition— It may be distinct, though. What was—I'm sorry, Your Honor? Could you— Everybody lives somewhere. Everybody who lives in El Salvador lives somewhere. And your evidence, if accepted, proves that a gang controls wherever that person happens to live. So, everyone lives in an area controlled by a gang, and that means everyone is subject to persecution if they leave their area for any reason, whether to go to school or go to work or see a sick relative or anything. Your Honor, the record here does not go to show the concerns that Your Honor just said. This record here shows that this narrow industry class of persons are persecuted because of their membership in this group. It is not as if this record shows that everybody will be persecuted for some non-volitional conduct in moving between gang territories. Mr. Morales-Gomez was compelled to go to school, as noted on page 204 of the record. And because of that, the society knows that when young school-age Salvadorian males live in one gang's territory and go to school in another, that they will be persecuted. And any future applicant that tries to fall under this particular social group, if this Court were to recognize it, would then have to show nexus and persecution on account of. And that significantly cabins the risk that any member in El Salvador could claim this group. I may have interrupted your answer to Judge Fletcher's question. I don't mean to take you away from it. Oh, Your Honor, I was just going to go on to say that in Henriquez-Rivas, this Court stated that the persecutor's perspective is important and for social distinction. And this record shows that the persecutors here relied on the boundaries of Mr. Morales-Gomez's group to persecute him and that members of the Salvadorian community understand. And that is the test that this Court stated in Henriquez-Rivas, that members of the relevant society understand that the common immutable characteristic that defines the group will lead to persecution. Okay. Thank you. Thank you. We've taken you over time. Thank you very much. Thank you, Your Honor. Again, thank you very much for the pro bono arguments, which have been very good. And Ms. Braga, you appeared now twice. Thank you for your nice arguments. The case of Morales-Gomez v. Sessions, submitted for decision. We're putting over to Dianne Romero the next Hernandez v. Silvia San Jose.
judges: D.W. Nelson, Kleinfeld, W. Fletcher